UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. MARTINELLI,<br>Petitioner,<br>v.<br>ROBERT NEUSCHMID,<br>Respondent. | Case No. 19-cv-05461-JD<br><br>**ORDER RE PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 20 |

Robert Martinelli, a pro se state prisoner, has brought a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. Martinelli filed a reply. The petition is denied.

## BACKGROUND

A jury found Martinelli guilty of first-degree residential burglary, attempted carjacking, and that another person was present during the burglary. Clerk's Transcript ("CT") at 301, 303. The jury also found true that Martinelli had two prior burglary convictions. *Id*. at 302, 304. In a bifurcated bench trial, the trial court found that Martinelli had three prior serious felony convictions and that he had served four prior prison terms. Supplemental Clerk's Transcript at 1-6. Martinelli was sentenced to 25 years to life in prison with a consecutive term of 16 years and 10 months. CT at 339. Martinelli's appellate counsel filed a brief pursuant to *People v. Wende*, 25 Cal. 3d 436 (1979), which calls for the court to conduct an independent review of the record. Answer, Ex. 6. On January 9, 2018, the California Court of Appeal affirmed the conviction. *People v. Martinelli*, No. A15339, 2018 WL 330130, at *1 (Cal. Ct. App. Jan. 9, 2018). The California Supreme Court denied review. Answer, Ex. 14.

**STATEMENT OF FACTS**

The California Court of Appeal summarized the facts as follows:

> On September 23, 2015, Zedrick Arrogante lived with his parents on Sarah Drive in Pinole. He left his home to meet his girlfriend 10 minutes from his house. He then returned with her to his home for lunch. When Arrogante entered his home, he saw appellant exiting the kitchen. The two men looked at each other and appellant quickly darted from the house through a patio door that was open. Arrogante chased him and called 911 during the pursuit. He failed to catch appellant and was told by the dispatcher to return to the house to await the police.
>
> Sometime later, Arrogante met with police to view a detained suspect, appellant. He was advised by the officers it would be improper to identify an innocent person. The victim, however, told police appellant was in fact the person he saw in his home. He also told police appellant had no permission to enter his home and the victim had never seen him before. Arrogante did acknowledge that earlier that morning he had seen the black truck appellant was detained in, parked on a road near his home.
>
> The police found miscellaneous items of jewelry and coins in appellant's pockets when he was detained. Since Arrogante was not familiar with the items, he sent a photo of the property to his mother and sister via text to see if they could identify the property. His mother identified the property found in appellant's pocket as jewelry she had in the home. It was located in her bedroom in a black bag. She did not know appellant and did not give him permission to enter or take her jewelry.
>
> Officer Zachary Blume was a Pinole police officer who happened to be in the vicinity of the Arrogante home on another matter. He was dispatched to the victim's house to investigate the interrupted burglary. While driving to the home, he saw appellant walking along a path behind houses in the victim's neighborhood. Based on the dispatched information, the officer detained appellant and searched him. In appellant's pocket, Blume found a crowbar, along with jewelry pieces and a pair of reading glasses. He also found the keys to a black truck parked near the scene.
>
> Blume was joined by another officer at this time, who took custody of appellant. After Blume went to speak with Mrs. Arrogante about the jewelry items, he heard screaming and calls from his fellow officer who was in charge of appellant. Blume went outside and learned appellant had successfully escaped custody. This escape triggered a manhunt by several police agencies. The responders included canine units and a police helicopter.
>
> During this effort to apprehend the escapee, Emily Laspona, an employee at a senior center, was getting into her car after work in the vicinity of appellant's escape. Once inside her car, the doors lock automatically. Appellant ran up to her car and tried to open her driver's side door, unsuccessfully. He was very aggressive and

2

>pounded on her car window. She believed he was trying to break into her occupied car. As Laspona backed out of her space, appellant lifted himself onto the passenger side of the car hood. However, he fell off the car as the driver continued backing out. Laspona, a native of the Philippines, was terrified by the event, but unable to call police immediately due to her serious speech impediment and limited familiarity with English. Once home, she told her family about appellant and the police were contacted. Laspona identified appellant at the trial as the suspect in the attempted car break-in.
>
>On the same day as these events, appellant was found by police running in the area of Interstate 80 near Pinole Valley Road. Richmond Police Officer Whitney made the arrest.
>
>Appellant was the only witness for the defense. He testified he knew Zedrick Arrogante. He went to the victim's home to collect on a drug debt. At the house, the two men spoke in the yard area of the home. At no time did appellant enter the residence. Appellant indicated Arrogante gave him jewelry and some money to help satisfy the obligation for drugs. He admitted his prior burglary convictions and one escape conviction. Appellant conceded he escaped from police custody on the day of the alleged burglary because he was afraid of prison as a third-striker. He admitted the attempt to get into the Laspona car because he needed to hide from police. She panicked when he made the request and put the car into reverse, causing him to fall.

*Martinelli*, 2018 WL 330130, at *1-2.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable

3

1  application of" Supreme Court authority if it correctly identifies the governing legal principle from
2  the Supreme Court's decisions but "unreasonably applies that principle to the facts of the
3  prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply
4  because that court concludes in its independent judgment that the relevant state-court decision
5  applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the
6  application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under §2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  In this case the Court looks to the opinion from the California Court of Appeal.

As grounds for federal habeas relief, Martinelli contends that: (1) the trial court erred when it denied his motion to substitute counsel pursuant to *People v. Marsden*, 2 Cal. 3d 118 (1970); (2) the trial court erred in denying his motion to represent himself; and (3) the trial court violated his right to a fair trial when it ordered his physical restraint in the courtroom.

### SUBSTITUION OF COUNSEL

**Legal Standard**

A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Nor is he entitled to an attorney who likes and feels comfortable with him. *United States v. Schaff*, 948 F.2d 501, 505 (9th Cir. 1991).  The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful

4

relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

The denial of an indigent criminal defendant's motion for substitution of counsel may violate his Sixth Amendment right to counsel. *See Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (test for determining whether court should have granted substitution motion is same as test for determining whether an irreconcilable conflict existed); *United States v. Velazquez*, 855 F.3d 1021, 1035-37 (9th Cir. 2017) (district court abused its discretion by denying defendant's request to substitute counsel without conducting any meaningful inquiry after defendant did everything in her power to alert court to significant breakdown); *United States v. Moore*, 159 F.3d 1154, 1160 (9th Cir. 1998) (where irreconcilable conflict existed between defendant and counsel trial, court's failure to appoint substitute counsel was reversible error); *Crandell v. Bunnell*, 144 F.3d 1213, 1215-18 (9th Cir. 1998) (denial of substitute counsel violated 6th Amendment where appointed counsel failed for months to investigate case and to develop relationship with defendant), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc).

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas proceedings. *Bland v. Cal. Dep't of Corr.*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc). When a defendant expresses a serious complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's concerns. *Id*. at 1475-76; *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982). The inquiry need only be as comprehensive as the circumstances reasonably permit. *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992).

**Background**

The California Court of Appeal set forth the relevant background:

> On October 26, 2016, two weeks before trial was to commence, appellant made a motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. During the in camera hearing, appellant complained his trial attorney was not properly interviewing appellant's girlfriend or her family, and not discussing the case with him before trial. The trial court obtained sufficient explanation from counsel to determine the attorney-client relationship was not jeopardized and that appellant's

5

Sixth Amendment rights were satisfied.

After the verdict, on March 17, 2017, appellant again sought new counsel. He raised complaints similar to those made in October 2016. The court found appellant was represented by effective counsel and did not grant the substitution motion.

*Martinelli*, 2018 WL 330130, at *3.

**Discussion**

The California Court of Appeal denied this claim:

Under *Marsden*, the court must determine if the relationship between counsel and accused has become substantially impaired and the conflict is not reconcilable. To ensure proper review of the issue, the trial court needs to conduct a hearing for the appellant to present his reasons. (*People v. Cole* (2004) 33 Cal. 4th 1158, 1190.) Appellant has the burden of proof on the issue. (*People v. Young* (1981) 118 Cal. App. 3d 959.) A disagreement between client and his counsel over strategy or trial tactics, or the number of meetings between the client and his lawyer, does not meet this burden. (*People v. Jackson* (2009) 45 Cal. 4th 662, 688.) After reviewing the record on this issue, we find insufficient evidence to find the relationship between client and counsel was impaired and that a valid conflict existed during the handling of this case.

*Martinelli*, 2018 WL 330130, at *3.

Martinelli has failed to demonstrate that the state court's conclusion was objectively unreasonable. The Court has reviewed the transcripts of the *Marsden* hearings, and sees no indication that there was a complete breakdown of the attorney-client relationship or an inability to present a defense at trial.

The trial court held two *Marsden* hearings, and at each hearing it inquired into trial counsel's conduct and Martinelli's concerns. The trial court gave Martinelli a full opportunity to explain his reasons for wanting to substitute another attorney for his trial counsel. On this record, it cannot be said that the California Court of Appeal was wrong to reject Martinelli's claim on this issue. The record indicates that trial counsel was providing competent representation, and that any disagreements with Martinelli did not rise to the level of a complete breakdown of the attorney-client relationship. In addition, the record demonstrates that the procedures employed by the trial court in response to Martinelli's requests for substitute counsel complied with the Sixth Amendment. *See Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007) (inquiry was adequate when court determined that the lines of communication were open and counsel was competent);

6

*United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (inquiry was adequate where defendant "was given the opportunity to express whatever concerns he had, and the court inquired as to [defense attorney's] commitment to the case and his perspective on the degree of communication").

As is in many cases, it was not always smooth sailing between lawyer and client here, but disagreements can be had about trial strategy without causing a total breakdown in their effectiveness as a team. *See Carter v. Davis*, 946 F.3d 489, 507 (9th Cir. 2019). Trial counsel repeatedly visited Martinelli in jail, as did the defense investigator. Docket No. 20-3 at 7. Trial counsel and his investigator contacted many of the witnesses that Martinelli suggested, and attempted to contact others. *Id*. Many of Martinelli's complaints involved tactical or procedural issues that were the responsibility of trial counsel. For example, counsel and the trial court informed Martinelli about the futility of filing frivolous motions. *Id*. at 7-8. Even so, trial counsel was able to mount a competent and complete defense, and Martinelli himself testified.

The denial of this claim by the California Court of Appeal was not an unreasonable application of Supreme Court authority or an unreasonable determination of the facts. This claim is denied on habeas review.

## SELF-REPRESENTATION

**Legal Standard**

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta*, 422 U.S. at 832. But a defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of securing delay. *Id*. at 835; *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994).

The *Faretta* language describing Faretta's request to represent himself as having been made "weeks before trial," 422 U.S. at 835, is part of the holding of the Court, and thus is "clearly established Federal law, as determined by the Supreme Court of the United States," for purposes of relief under the current version of 28 U.S.C § 2254(d). *Moore v. Calderon*, 108 F.3d 261, 265 (9th Cir. 1997), *overruled on other grounds in Williams v. Taylor*, 529 U.S. 362 (2000). After *Moore*, we know that *Faretta* clearly established some timing element, but we do not know the

precise contours of that element beyond the fact that requests made "weeks before trial" are timely. *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005).[1] Because the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts, including state courts, are free to do so, as long as they comport with the Supreme Court's holding that a request made "weeks before trial" is timely. *Id.* (holding that California court was not "contrary to" clearly established Supreme Court law under 28 U.S.C. § 2254(d) when it found that petitioner's *Faretta* request on the first day of trial before jury selection untimely).

A request to represent oneself "need not be granted if it is intended merely as a tactic for delay." *United States v. Flewitt*, 874 F.2d 669, 674 (9th Cir. 1989). A court may consider (1) the effect of any resulting delay on the proceedings, and (2) events preceding the motion, to determine whether they were consistent with a good faith assertion of the *Faretta* right and whether the defendant could reasonably be expected to have made the motion at an earlier time. *Avila v. Roe*, 298 F.3d 750, 753-54 (9th Cir. 2002) (remanding for evidentiary hearing, where district court failed to consider first factor and failed to give any weight to state appellate court's findings regarding second factor); *see also Hirschfield v. Payne*, 420 F.3d 922, 927 (9th Cir. 2005) (holding that it was not unreasonable for the state court of appeal to find that petitioner's motion for self-representation was made in order to further delay the proceedings where it was made the day before trial, he had moved to substitute counsel on four previous occasions, and he admitted that every time he asked for a new attorney it was close to trial).

**Background**

The California Court of appeal set forth the relevant background:

> On September 27, 2016, with a trial date of October 17, 2016, appellant notified the court he intended to seek self-representation status on that later date. He further indicated he needed a continuance of the trial, a legal runner, an investigator, and court-ordered funds.

---

[1] In *Moore*, the Ninth Circuit discussed a bright-line rule for the timeliness of *Faretta* requests: a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay. 108 F.3d at 264-65. But the Ninth Circuit has not applied *Moore's* bright-line rule as "clearly established" Supreme Court law for the purposes of 28 U.S.C. § 2254(d). *See Marshall*, 395 F.3d at 1059, 1062 (state court's determination that petitioner's *Faretta* request made on the day of trial, but before jury selection, was untimely, was not "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)).

8

> However, on the date to start the trial, October 17, 2016, appellant never asked to represent himself. The trial was set to start on November 7, 2016. On October 26, appellant did ask to represent himself and also sought a 90–day continuance. The prosecutor objected to a long continuance, claiming the request for self-representation was not timely. The court denied the *Faretta* motion as untimely (*Faretta v. California* (1974) 415 U.S. 975).

*Martinelli*, 2018 WL 330130, at *3.

**Discussion**

The California Court of Appeal denied this claim:

> Under *People v. Windham* (1977) 19 Cal. 3d 121, 128, fn. 5, a late request by a defendant to represent himself if reasonably justified should be granted. However, if the *Faretta* request is made to delay the "orderly processes of justice," a trial court is not required to grant the request if it appears unreasonable. (*Ibid*.) "[A] trial court may consider the totality of the circumstances in determining whether a defendant's pretrial motion for self-representation is timely. . . . [A] trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*People v. Lynch* (2010) 50 Cal. 4th 693, 726.)
>
> In this case, appellant had toyed with the idea of self-representation before filing his motion. Yet he refrained from doing so. Later he made his *Faretta* motion, but indicated he needed substantial additional time to prepare for trial. The government was ready to proceed and had several lay witnesses prepared to testify. We cannot say the trial court abused its discretion in determining the motion was not reasonable under the circumstances.

*Martinelli*, 2018 WL 330130, at *3.

The salient facts are that Martinelli advised the trial court on September 27, 2016, that he intended to make a request for self-representation on October 17, 2016, which was the start of the trial. *Martinelli*, 2018 WL 330130, at *3. He did not make that request. Supplemental Reporter's Transcript at 4. Trial was then scheduled for November 7, 2016. *Id*. at 2. On October 26, 2016, twelve days prior to the expected trial date, Martinelli made the *Faretta* request. *Id*. The trial court denied the request as untimely. *Id*. at 5. Trial was ultimately delayed and did not commence until January 10, 2017. CT at 199. Martinelli made no other *Faretta* requests.

9

1    The California Court of Appeal found that the *Faretta* motion was properly denied as untimely. The issue for this Court is whether the state court's conclusion was contrary to, or involved an unreasonable application of, clearly established federal law. Ultimately this court must determine if Martinelli's *Faretta* request, twelve days before trial, was timely or untimely with respect to the "weeks before trial" period.

"Supreme Court precedent regarding the permissible timing of a *Faretta* request is scarce. No Supreme Court case has directly addressed the timing of a request for self-representation." *Marshall*, 395 F.3d at 1060. State courts are free to determine when a *Faretta* request is untimely as long as they comport with the Supreme Court's holding that a request made "weeks before trial" is timely. *Id*. at 1061.

"If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law." *Ponce v. Felker*, 606 F.3d 596, 604 (9th Cir. 2010) (quoting *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)). Martinelli bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). Specifically, Martinelli "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Martinelli has failed to demonstrate that the state court opinion which cited *Windham*, was unreasonable in light of the exacting standard described above. The Ninth Circuit has found against a criminal defendant in similar circumstances. *See Randle v. California*, 142 F. App'x 977 (9th Cir. 2005) (state court did not err in denying as untimely a *Farretta* motion made two weeks prior to the beginning of trial, and application of the balancing of factors identified in *Windham* was not an unreasonable application of established federal law) (unpublished).

The denial of the *Faretta* motion occurred twelve days prior to when the trial was set to begin. While this could be considered close to "weeks before trial," the California Court of Appeal also considered the other evidence surrounding the request, which is permissible. *Avila*,

10

298 F.3d at 753-54 (a court may consider (1) the effect of any resulting delay on the proceedings, and (2) events preceding the motion, to determine whether they were consistent with a good faith assertion of the *Faretta* right and whether the defendant could reasonably be expected to have made the motion at an earlier time.) The state court noted that Martinelli had previously considered self-representation but declined to make the request. The state court also noted that Martinelli stated he needed substantial additional time to prepare, while the prosecution was ready with several lay witness prepared to testify.

The denial of the *Faretta* motion was not objectively unreasonable based on Martinelli's failure to earlier request self-representation as he indicated he would, and the lengthy delay he stated he needed. Nor was the state court's implied factual finding that Martinelli's request was made to delay trial, based on an unreasonable determination of the facts in light of the evidence presented. Finally, while it is troubling that trial was delayed for several months, the trial court, when denying the *Faretta* motion, was unaware any delay would occur. After the trial became delayed, Martinelli did not again assert a *Faretta* motion. This claim is denied.

## SHACKLING

Martinelli contends that his due process rights were denied because he was restrained in the courtroom and while being escorted to and from the courtroom. Petition at 16.

**Legal Standard**

The Constitution forbids the use of shackles (or other physical restraints) visible to the jury absent a trial court determination, in the exercise of its discretion, that the use is justified by an essential state interest -- such as the interest in courtroom security-specific to the defendant on trial. *Deck v. Missouri*, 544 U.S. 622, 624 (2005); *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999) ("*Rhoden II*"). Generally, the defendant's right to due process is violated if the trial court fails to make a finding on the record justifying the necessity of physical restraints, and the absence of such a finding cannot be cured by the reviewing court's after-the-fact justifications. *Larson v. Palmateer*, 515 F.3d 1057, 1063 (9th Cir. 2008).

The Ninth Circuit has held that due process requires the trial court to engage in an analysis of the security risks posed by the defendant and to consider less restrictive alternatives before

permitting a defendant to be restrained. *Rhoden II*, 172 F.3d at 636. But Supreme Court precedent only explicitly recognizes the first requirement. *See Deck*, 544 U.S. at 624, 633 (only requiring essential state interests such as special security needs or escape risks specifically related to defendant on trial before shackles may be used); *see also Hedlund v. Ryan*, 854 F.3d 557, 568-69 (9th Cir. 2017) (finding state court decision affirming use of leg brace was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent where ordering the leg brace was justified by an essential state interest).

A jury's brief or incidental glimpse of a defendant in physical restraints outside of the courtroom does not presumptively warrant habeas relief. *See Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004). In such cases, the defendant must demonstrate actual prejudice to warrant habeas relief. *See Rhoden II*, 172 F.3d at 636. He must show that the shackling "'had substantial and injurious effect' on the jury's verdict." *Ghent v. Woodford*, 279 F.3d 1121, 1132 n.9 (9th Cir. 2002) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). When the jury does not see in the courtroom that a defendant was shackled, no prejudicial or reversible error arises. *Rich v. Calderon*, 170 F.3d 1236, 1240 (9th Cir. 1999); *Rhoden II*, 172 F.3d at 636; *Williams*, 384 F.3d at 592.

**Background**

The California Court of appeal set forth the relevant background:

> At the start of the trial, appellant's counsel objected to his client being physically restrained with a belt attached to his courtroom seat. In rejecting the claim, the court ruled that "[t]here is a belt that is placed around his waist. That is not visible, at least not from here. And as far as I can tell, not visible to jurors entering into the courtroom. [¶] . . . [¶] . . . His hands will be free, as well as his legs. So nobody will see the restraints." The court further indicated this restraint procedure had been used in other cases in the courthouse. The judge relied on his experience that jurors in other cases had not in fact noticed the belt restraint during prior trials. The court further conceded appellant had not engaged in disruptive conduct in pretrial matters. However, the court was very concerned appellant had a prior escape conviction from jail, and had assaulted an arresting officer and escaped in his initial arrest for the crimes on trial. As the court observed: "[W]hatever merit there was to that argument [regarding the age of the escape conviction] is certainly defeated by the fact that recently violence was used to hospitalize a deputy on the instant offense. [¶] So it seems to me that the risk of violence and/or escape is still present, despite the passage of time, and I'm not going to second-

12

> guess my deputy's professional judgment in the matter. And so I do approve of the manner in which the sergeant has outlined of the security arrangements in the courtroom."
>
> When appellant testified in the trial, he was not restrained. A bailiff was nearby when he testified.
>
> After the verdict was returned, it was called to the attention of the court that appellant passed from the courtroom to the jail area through a public corridor. During those trips appellant was shackled. No prior objection was made to this practice, even though it was known to occur with custodies in the courthouse. The objection here arose when appellant's sister wrote a letter to the court complaining about it. The court, when presented with this matter in the letter, pointed out this was the way prisoners are transported from the jail to the courtroom. There was "no other way." Additionally, if advised earlier in the case, the court could have commented on the matter to the jury or considered other possibilities like instructing the jury. The issue was left with defense counsel advising the court he would look into the matter and see if this impacted the jury. If so, a new trial motion would be an option. No subsequent motion was made, however.

*Martinelli*, 2018 WL 330130, at *4.

**Discussion**

The California Court of Appeal set forth the relevant state law and denied this claim:

> The use of restraints of a defendant during the actual trial is evaluated in large part whether this practice was visible to the jurors or the public while it was happening. In this record we have not noted the restraints were visible to the jury. The court indicated the security belt appellant wore was not visible. This is important. If restraints are not visible, the conduct is assessed under the standard of *People v. Watson* (1956) 46 Cal .2d 818 and *People v. Jackson* (1993) 14 Cal. App. 4th 1818, 1826. Generally, prejudicial error does not occur when the defendant is seen in shackles for only a brief period either inside or outside the courtroom by one or more jurors. (*People v. Tuilaepa* (1992) 4 Cal. 4th 569, 584.)
>
> It is also true a court correctly exercises its discretion to shackle and there is no due process violation where the accused on trial has a history of engaging in escape or outbursts. In this case, appellant, an accused "third-striker," had a prior felony escape conviction. He also actively resisted arrest in this case, injuring a police officer in the process, because he knew he was facing substantial custody time if convicted. Also, at the time of trial, appellant had five prior serious and/or violent prior felony convictions. A substantial criminal history, prior escape attempts, and flight when police attempted to arrest the defendant in the case on trial justify physical restraints during the proceedings, especially when the jury apparently is not aware of such shackling. (*People v. George* (1994) 30 Cal. App. 4th 262, 269; *People v. Pitcock* (1982) 134 Cal. App. 3d 795, 800–801.) In light of these several factors, we find no abuse of discretion or due process violation in the court's actions.

> Regarding the use of restraints to transport appellant from a custodial site to the courtroom for trial, we observe that we are dealing with a situation where the jurors were apparently unaware of the matter. Appellant's sister complained in her letter, but defense counsel indicated to the court he would review the matter and, if a violation could be found, would make the appropriate motion. No such motion was made. We cannot speculate this issue affected the trial without a better record.
>
> It is also true the propriety of shackling a defendant while in transit through public hallways of a courthouse to attend the trial cannot be judged by the same standards used to determine restraints in the courtroom. The consideration of public safety and the need for restraints are different during prisoner transport as opposed to the accused seated in the courtroom itself. In *People v. Cunningham* (2015) 61 Cal. 4th 609, 632, the court found no abuse of discretion in the use of physical restraints during prisoner transit through public hallways of the courthouse without any showing of necessity.
>
> It is also true, in this case, regardless of the nature of any restraint of appellant, appellant's counsel at no time requested any court instruction to the jury precluding any adverse inference on appellant's guilt from the observation of physical restraints. Appellant would certainly be entitled to proper jury instructions on this circumstance and error could be found if the court refused to give such. (*People v. Givan* (1992) 4 Cal. App. 4th 1107, 1116–1117.) However, the evidence here supports the court's conclusion the restraints were not visible. Without further evidence in the record upsetting this conclusion, we find no error, let alone error that is prejudicial. (*Ibid.*; *People v. Jacla* (1978) 77 Cal. App. 3d 878, 883.

*Martinelli*, 2018 WL 330130, at *4-5.

Martinelli has failed to demonstrate that the state court's conclusion was objectively unreasonable. There are no allegations or evidence that any juror saw Martinelli in restraints in the courtroom. Nor are there are any allegations or evidence that any juror observed Martinelli is restraints while being escorted to and from the courtroom.

The trial court met its due process obligations when it engaged in an analysis of why restraints were required in the courtroom due to Martinelli's prior escape conviction and his escape from custody and assault on a police officer during the arrest for the instant offense. Assuming a juror may have briefly seen Martinelli in restrains outside of the courtroom, he has failed to demonstrate actual prejudice to warrant habeas relief. This claim is denied.[2]

---

[2] In his traverse, Martinelli attempts to add a new claim of ineffective assistance of appellate counsel. This claim was not part of the original petition. It is insufficient that in the petition, Martinelli attached numerous letters and state court opinions that contained the ineffective

14

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id*. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has made no showing warranting a certificate.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. A Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. Respondent's motion to file the *Marsden* transcripts under seal (Docket No. 20) is **GRANTED**.[3]

**IT IS SO ORDERED.**

Dated: October 27, 2020

JAMES DONATO
United States District Judge

---

assistance of counsel argument among many other claims. A district court is not obliged to act as counsel or paralegal to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Once the Court issued the order to show cause setting forth the claims, Martinelli failed to notify the court of any additional claim he wished to pursue. Even if this claim had been presented, he would not be entitled to relief. Martinelli fails to identify what issue should have been appealed and how that issue may have had merit. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

[3] The Court may order a document filed under seal when it contains privileged or otherwise protectable information, and the request is narrowly tailored to preserve the public's right of access to court proceedings. *See* N.D. Cal. Local Rule 79-5; *Hagestad v. Tragesser*, 49 F.3d 1430, 1433-34 (9th Cir. 1995). Respondent asks to file the transcripts of the *Marsden* hearings under seal. Martinelli does not oppose the motion. The transcripts are considered confidential under state law and contain confidential discussions between Martinelli and his attorney. This is enough to justify sealing the transcripts.